STATE *EX REL.* THE NATIONAL BANK OF NEWBERRY v. BOYD.

1. AUDITOR'S BOOK—TAX DUPLICATE.—Where an assessment entered upon the auditor's books and transcribed into the tax duplicate turned over by him to the county treasurer has been reduced on the auditor's books by order of the court, has the original entry on the tax duplicate unchanged by the auditor, any legal warrant to support it?

2. ASSESSMENTS FOR TAXATION.—The courts cannot interfere with the collection of taxes, but are open for the correction of errors of law made by officers charged with the assessment of property for taxation. *National Bank* v. *Cromer, ante* 213, reaffirmed.

3. IBID.—Sections 239–242, of the General Statutes, do not confer upon the county auditor the power to increase the valuation of property as returned for taxation, where a return has been made which is not intentionally false.

4. MISTAKE defined, and held not applicable to a return of property at a valuation less than what it is worth in the estimation of some others.

5. ASSESSMENTS FOR TAXATION—CORRECTIONS.—Where a taxpayer returns his property at less than its value and under circumstances which would authorize further action by the county auditor, the auditor cannot increase the assessment without notice to the taxpayer and without instituting proper inquiry and examining witnesses as to the true value.

6. MANDAMUS.—The ruling of this court as to mandamus proceedings in *National Bank* v. *Cromer, ante* 213, approved.

In this case the Hon. T. B. Fraser, of the Third Circuit, and Hon. James Aldrich, of the Second Circuit, sat in the places of Mr. Justice McGowan, who was disqualified by interest, and Mr.

Justice Pope, who, as attorney general, had been counsel in the matter.    It was an original application to this court, commenced by the filing of a petition which set forth substantially the same facts as were stated in the petition in the Cromer case, and the following additional allegations :

XII. That thereafter, to wit, on the sixteenth day of November, 1891, your petitioner petitioned the Court of Common Pleas for the said County of Newberry, his honor, Judge J. H. Hudson, presiding, for the writ of mandamus, to compel the said county auditor to correct the said tax lists and tax duplicates so as to fix the valuation of the said personal property at one hundred and fifty thousand dollars, and to fix the tax payable on the same for the said fiscal year at two thousand and twenty-five dollars, reciting substantially the facts herein above alleged—upon which petition, duly verified, his honor, the said Circuit Judge, ordered the said county auditor to shew cause, on the eighteenth day of November, 1891, why the said writ should not be issued.

XIII. That upon the return of the said county auditor to the said order to shew cause, and, on argument of counsel, the said Circuit Judge ordered the clerk of the said Court of Common Pleas for the said county to issue a peremptory writ of mandamus, requiring the said county auditor to make the said corrections in the said tax lists and duplicates; and thereafter the said clerk issued such writ, the form and language thereof being determined by the said Circuit Judge.

XIV. That upon the service of the said writ of mandamus on the said county auditor, he corrected the books remaining in his hands in accordance with the requirements of the said writ, and so notified Calhoun F. Boyd, county treasurer for the said County of Newberry, in writing, and in the same writing authorized the said county treasurer to make such said corrections in the tax duplicate in the hands of the said county treasurer, such said writing being served on the said county treasurer, on the tenth or eleventh day of December, 1891 ; and the said county auditor, as your petitioner is informed and believes, on the same day requested the said county treasurer, verbally, to allow him to make the said corrections in the books in the hands of the said

county treasurer, a copy of which said notification and authorization is hereto attached, marked exhibit "A."

XV. That the said Calhoun F. Boyd, county treasurer of the said County of Newberry, has refused, and still refuses to correct the tax duplicate in his hands according to the terms of the said writ, and refuses to allow the said county auditor to make such said corrections; whereby the value of the personal property of your petitioner still remains on the duplicate in the hands of the said county treasurer as two hundred and thirty thousand dollars, and the tax payable on the same for the said fiscal year still remains there as three thousand one hundred and five dollars ; whereas, your petitioner alleges the valuation of the said personal property, under the facts of the case and the ruling of the said Circuit Judge, should be entered on the said county treasurer's books at one hundred and fifty thousand dollars, and the tax collectible on the same for the said fiscal year should stand on those books at two thousand and twenty-five dollars.

XVI. That on the fourteenth day of December, 1891, your petitioner tendered the said county treasurer sixty seven dollars and fifty cents in payment of the tax of the real estate of your petitioner, in the said County of Newberry, for the said fiscal year, and two thousand and twenty five dollars, in gold coin, in payment of the taxes on the said personal property for the said fiscal year ; of which said tenders the former was accepted and received, and the latter refused, in conformity, as the said county treasurer stated, with the instructions received by him from said comptroller general. This said sum of two thousand and twenty-five dollars your petitioner is still ready to pay in settlement of the taxes on the said personal property for the said fiscal year.

XVII. That the said county auditor has appealed to this court from the decision of his honor, Judge J. H. Hudson, above described.

XVIII. That your petitioner is advised that it has no other remedy against the said unlawful entries on the said county treasurer's books except the writ of mandamus, to compel him to make the said corrections, or to have them made by the said

county auditor, or such person or officer as your honors may direct.

Wherefore, your petitioner prays that your honors will grant the peremptory writ of mandamus, commanding the said county treasurer to correct the said tax duplicate in his hands, to enter the value of the said personal property at one hundred and fifty thousand dollars, and to enter the tax payable on the same for the said fiscal year at two thousand and twenty-five dollars, so as to correspond with the tax duplicate now held by the said county auditor; or, if your honors should hold that such said corrections should be made by the county auditor for the said county, commanding the said county treasurer to suffer the said county auditor to make the said corrections in his, the said county treasurer's, books; and commanding the said county treasurer to do such other and further things as the law of the land and the exigencies of the case demand.

[Verified.]

Upon presentation of this petition to the Supreme Court, the Chief Justice signed an order requiring Calhoun F. Boyd, county treasurer of Newberry, to show cause, &c., in the usual form. The return of the county treasurer was as follows:

*To the Honorable the Chief Justice and Associate Justices of the Supreme Court:*

Calhoun F. Boyd, as the county treasurer of Newberry county, in said State, in answer to the alternative writ of mandamus herein served upon him on the 6th day of January, 1892, requiring him to show cause why the peremptory writ of mandamus should not issue herein, commanding him to correct the tax duplicate in his hands for the fiscal year commencing on the first day of November, 1890, to correspond with the duplicate in the office of the county auditor for said county, so as to place the value of the personal property of the petitioner at $150,000, and to place the taxes payable on the same at $2,025, and as a return to said alternative writ, would respectfully show:

1. That this respondent admits allegations of the first, second, third, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth paragraphs of the petition to be true.

2. That in answer to the fourth paragraph of the petition the respondent denies that Wallace C. Cromer, as auditor of said county, received the return of the property of the said bank for taxation referred to in the preceding paragraphs of the petition as correct, but alleges that he received the same, as his duty required him to do, without any regard to its correctness or incorrectness, as will appear by the affidavit of the said Wallace C. Cromer hereto attached as exhibit A.

3. That he denies the truth of the allegations in the fifth paragraph of the petition, that the township board of assessors of Newberry township passed the said return as correct by any formal determination, but alleges that they simply passed it without objection, as shown by the affidavit of H. H. Folk and Geo. McWhirter.

4. Admits the truth of the allegations contained in the sixth paragraph of the petition, but denies that such action on the part of the county board of equalization could in any wise correct and determine the subsequent action of the county auditor in the performance of his duty in respect to said returns under section 239 of the General Statutes of South Carolina.

5. That the respondent admits the allegations of the seventh paragraph of the petition to be true, but alleges that while the said county auditor believed that he had been ordered by the comptroller general of the State to raise the valuation of the personal property of the petitioner as stated in said paragraph, yet, that the said auditor was not actually so directed to do, but he was simply directed to follow the general instructions contained in circular No. 10, dated 14 February, 1891, hereto attached as exhibit B, and that these instructions on the part of the comptroller general and this action on the part of the county auditor in raising said valuation resulted from the information which both of these officers had received, that the said return as made by the petitioner was below the true value in money of the property so returned.

6. That in regard to the allegations of the eighth paragraph of the petition, which the respondent admits, there was no charge of fraud or concealment in regard to said return, he denies the allegations that there was no charge of omission or mistake, and,

on the contrary, alleges that this controversy grew out of the single question whether the petitioner had not made a mistake in making the said return of property below its true value in money.

7. That in regard to the allegations contained in the ninth paragraph of the petition, he admits them to be true, except that he denies the allegation that the comptroller general charged no omission or mistake on the part of the petitioner in making said return, and except the allegation that the comptroller general caused the county auditor to keep the said increased valuation of said property on his tax books, and to enter the tax payable on the same.

8. That in regard to the allegations contained in the eighteenth paragraph of the petition, the respondent is advised, and alleges. that under the express provisions of section 268 of the General Statutes of South Carolina, a complete remedy is given to the petitioner herein for the alleged unlawful assessment against it, and that section 269 of the General Statutes of South Carolina expressly forbids the remedy by writ of mandamus in such cases.

9. That this respondent, further making return to said order, alleges that as the tax duplicate which is sought herein to be corrected was turned over to this respondent on the fifth day of October, 1891, and before the date of the mandamus issued against the auditor requiring him to correct said duplicate ; that at the date of said writ of mandamus the said county auditor had parted with and had no power or control whatever over said duplicate. And that this respondent, as county treasurer, was not empowered, nor was it in anywise his duty, after the said 5th day of October, 1891, to so correct said duplicate, or to use it in any other way than for the collection of the taxes assessed thereon.

Therefore the respondent submits that the writ of mandamus should not issue as demanded by the petitioner.

[Verified.]

*Messrs. J. F. J. Caldwell* and *James Y. Culbreath,* for relator.

*Mr. McLaurin,* attorney general, contra.

February 11, 1892. The opinion of the court was delivered by

MR. JUSTICE FRASER. This case, an original application to the Supreme Court, and the case of the State of South Carolina *ex relatione* the National Bank of Newberry, South Carolina, *v.* Wallace C. Cromer, as county auditor of Newberry County, petition for mandamus, being an appeal from the judgment and order of his honor, Judge Hudson, on Circuit, were heard together in this court. These cases grow out of the same matter and involve a discussion of the same principles. The second case is against the auditor, while this one is against the treasurer; and it is claimed that the facts set out and admitted to be true in the case of the auditor, and now in this court on appeal. are modified by statements made in this case against the treasurer. Separate judgments will therefore be filed in the two cases.

A reference to the other case will show all the facts, except so far as they are modified by the statements herein made. The return of the bank for the taxes for the fiscal year commencing November 1, 1890, was duly made and sworn to by the president of the bank, in which the personal property was valued at $150,-000, and on which the tax was $2,025. This return was passed without objection by the township board and approved by the county board, and was received by the auditor without objection. Subsequently the said personal property was placed by the auditor on his tax list and his tax duplicate at a valuation of $230,-000, and charged with a tax of $3,105.

In the case against the county auditor now before this court on appeal, it was admitted that this increase in valuation was made solely on the order of the comptroller general. The return of the treasurer alleges "that while the said county auditor believed that he had been ordered by the comptroller general of the State to raise the valuation of the personal property of the petitioner * * * that the said auditor was not actually so directed to do;" but was directed to follow the general instructions contained in "circular No. 10," and "that these instructions on the part of the comptroller general, and this action on the part of the county audi-

tor in raising said valuation, resulted from the information which
both of these officers had received, that the said return as made
by the petitioner was below the true value in money of the pro-
perty so returned." This statement in the return has not been
traversed and must be assumed to be true. It is also an admit-
ted fact that the tax duplicate now in the hands of the treasurer
was turned over to him before the writ of mandamus was issued
to the auditor in the other case heard with this.

The application to this court is for a writ of mandamus, com-
manding the treasurer to correct the said "tax duplicate in his
hands, to enter the value of the said personal property at $150,-
000, and to enter the tax payable on the same for the said fiscal
year at $2,025, so as to correspond with the tax duplicate now
held by the said county auditor; or if your honors should hold
that such said correction should be made by the said county audi-
tor for the said county, commanding the said county treasurer to
suffer the said county auditor to make said correction." The
order and judgment of Judge Hudson, under which the said writ
of mandamus was issued, have on appeal been this day affirmed
by this court.[1] That writ commanded the auditor to correct his
duplicate. The auditor notified the treasurer of the contents of
the writ, authorized him to make the correction in the treasurer's
duplicate, and verbally requested him to allow him, the said audi-
tor, to make the corrections, either of which the treasurer de-
clined to do.

This case against the auditor having been brought on appeal
to this court, and it having been definitely decided, that upon the
state of facts appearing in that case, the corrections should
be made, and the required corrections having been made
in the tax duplicate in the auditor's office, so as place the
valuation of this property at $150,000, charged with a tax of
$2,025, it might be a serious question whether the tax duplicate
in the treasurer's office, so far as this property is concerned, and
in which it has been put at a valuation of $230,000, and at which
it now stands charged with a tax of $3.105, has anything on
which it can stand. The duplicate put into the hands of the
treasurer is his warrant to collect the tax which has been ascer-

---

[1] *Ante,* p. 213.

tained in a proper manner to be due, and is represented by what appears in the auditor's duplicate. Would not some of the same consequences follow which would follow if an execution were to issue out of the Court of Common Pleas, and an attempt were made to enforce it after substantial changes are made by competent authority in the judgments on which it is founded? This view of the case has not been considered in argument, and no ruling is made upon it. We will proceed to consider the case as if there had been no writ of mandamus against the auditor and upon the state of facts as now presented to this court.

I. This is not a proceeding to interfere with the collection of taxes, with which the courts are forbidden to interfere by sections 171 and 269 of the General Statutes. It is only a question as to the proper mode of arriving at the true valuation and the proper tax chargeable thereon by the officers and in the manner provided by law. Where the officers charged with the duty of assessing property confine themselves to their duties as prescribed by law, this court cannot interfere even without the provisions of sections 171 and 269, *supra;* but when they do not follow the rules laid down which give them jurisdiction, it is the duty of this court always to be open to the complaints of those who claim to have been illegally dealt with by these officers. The views of this court as to the construction of sections 171 and 269, and their applicability to a case like this, will be found in the case of the State of South Carolina *ex relatione* the National Bank of Newberry, S. C., *v.* Wallace C. Cromer, as auditor of Newberry County, heard with this case, and in which the opinion and judgment of this court has been this day filed.[1]

II. Here, as in the case against the auditor, the next question is whether the valuation of this personal property at $150,000, charged with taxes to the amount of $2,025, is valid, or whether the increased valuation at $230,000, charged with taxes to the amount of $3,105, is the valid assessment. It is not now an inquiry whether the smaller or the larger amount is the true value. That question is not now in any way before this court; the question is, which is the valuation ascertained by the offi-

[1] Next case *ante,* p. 213.

cers and in the mode provided by law ?   This question is a very important one, because if this assessment raised by the auditor on mere information and belief, the source of which is not stated, is to be held valid and binding on the taxpayers, then the auditor may in the same way, and on any information he may regard as sufficient, raise the valuation of every item of personal property returned for taxation by the citizens, however honestly and truly, and thus increase the public burden to an amount limited only by his own discretion.   Banks are not alone involved.

It is now denied that the auditor acted on an order from the comptroller general.   We will consider the case as though the claim now is that the auditor acted on his own belief as to the valuation of this property, though we have examined this return of the treasurer, and we do not find it anywhere stated that the auditor believed the information on which he acted to be true.   The auditor's own affidavit in this case only claims that at the time he increased the valuation under what he believed to be an order of the comptroller general, he had reliable information that the property was returned at less than its true value, and there is no statement of any information or belief that $230,000 was the true valuation.

Again, it is nowhere stated that there was any exercise of judgment or of discretionary power on the part of the auditor on which he based this increase of valuation, or his belief that not $150,000, but $230,000, was the true valuation.   His information, or his belief, whichever it may be, while set up as contemporaneous with, or resulting in, the increase of valuation, is not clearly set up as the ground on which the auditor based his conclusion and his action in this matter.   He believes that he was directed to do the act by the comptroller general, and acted on this belief.   We will, however, consider the case under the assumption that the auditor believed $150,000 not to be the true value, but that $230,000 was, and that the increase in valuation was his official judgment, based on this information and belief, and thus his own official act.

The authority is claimed under sections 239, 240, 241, and 242 of the General Statutes.   Section 240 refers only to certain

criminal proceedings for offences therein stated. Section 242 provides for certain costs and expenses incurred in the investigations provided for in section 239. In section 239 it is provided that the auditor shall notify a party and commence an investigation in these cases : First, where any person has evaded making a return ; or, second, made a false return of personal property for taxation ; or, third, has not made a full return ; or, fourth, the valuation returned is less than it should have been. While in any of these cases the auditor may commence an investigation, he is authorized to act on the facts developed by the investigation by section 241 only in the following cases : where the party has, first, failed to make any return for taxation ; or, second, intentionally made a false return ; or, third, intentionally returned property for taxation at less than its cash value.

These are all cases of fraud, in which the penalty of 50 per cent. addition to the valuation is incurred, and must be imposed by the auditor. It is not necessary now to consider whether in these cases it is necessary for the boards, or either of them, to pass on the matter of valuation. The only other state of facts on which the auditor can act, when shown to exist by this investigation, is where a party has committed "a merely unintentional mistake," in which case the auditor may add such amount as may be just, and charge simple taxes only against the party. It is not contended that this case comes within either of the first three classes above stated, and no 50 per cent. penalty has been added, as should have been done, if this case came within either of these classes.

Now, the word "mistake" has a technical meaning. It consists of unconsciousness, ignorance, or a forgetfulness, or then it may be a belief of the existence of some fact past or present which did not, or does not, now exist, and on which the party acted. "Where an act is done intentionally and with knowledge of the doing, the act cannot be treated as a mistake." Pom. Eq., sec. 854. Errors of judgment cannot be called mistakes. One of the purposes for which these boards have been constituted by our tax laws is to correct these errors of judgment on the part of the taxpayers. The valuation in this case was sworn to and passed by one board without objection,

and distinctly approved by the other. It is hard to see how it can be called a merely "unintentional mistake."

If, however, this is one of the cases coming within the purview of these sections—239, 240, 241, and 242—it is not claimed, and it nowhere appears, that the auditor acquired jurisdiction over this special case by giving to the bank the notice and instituting the investigation prescribed in these sections. Until this notice was given the auditor had no more jurisdiction in this special case than the Court of Common Pleas would have before the service of a summons in an action for relief, or the Court of General Sessions to try, convict, and punish a man for a criminal offence before he had been arrested on a warrant so as to bring him within the jurisdiction of the court. Even if there had been a notice as required, it should appear that all the proceedings were regularly had, which are prescribed in these sections, including the very important matter of the examination of a party and such witnesses as may be called under oath, and that the auditor did not act merely on what he considered reliable information.

With these views, we conclude that the auditor had no jurisdiction to change the valuation of this property from $150,000 to $230,000, as that entry stood on his duplicate, and though corrected, or that now stands on the treasurer's duplicate, with no more authority of law than if it had been placed there by himself inadvertently, or by some clerk or other person against his consent or without his knowledge.

III. The views of this court as to the propriety of issuing a writ of mandamus in cases like this have been given in the case against the auditor, Wallace C. Cromer, heard with this case, and it is not necessary here to repeat them. The order of Judge Hudson and the writ of mandamus issued under it commanded the auditor to correct the duplicates, and this includes the duplicate now in the hands of the treasurer.

It will be time enough to consider the question of the treasurer's liability whenever any attempt is made to hold him responsible for not collecting a tax which once appeared on the duplicate in his hands, and which this court holds to have been placed there without warrant of law.

It is, therefore, ordered and adjudged, that a peremptory writ of mandamus do issue from this court commanding Calhoun F. Boyd, as county treasurer of Newberry County, to correct the tax duplicate in his hands for the fiscal year commencing November 1, 1890, so as to enter the valuation of the personal property of the petitioner at $150,000, and to enter the tax payable on the same for the said fiscal year at $2,025, so as to correspond with the tax duplicate now held by the said county auditor, Wallace C. Cromer, or that he shall permit the said auditor to make such corrections, which corrections, when so made by the auditor in obedience to the writ heretofore issued in the above stated case against the said auditor, shall be held to be a compliance with the writ hereby ordered.