## STATE *EX REL.* BANK OF MARLBORO v. COVINGTON.

1. CONSTRUCTION OF STATUTES—ASSESSMENT OF PROPERTY.—The several provisions of the General Statutes relating to taxation must be construed *in pari materia ;* and, so construed, the return of a taxpayer is made to the county auditor and by him submitted to the township board of assessors, and then submitted to the county board of equalization, with a right of appeal by the taxpayer to the comptroller general; and the action of these boards, when finally determined, is conclusive upon the taxpayer and all others, in the absence of mistake and fraudulent collusion.

2. IBID.—IBID.—Due regard being had to these provisions, and to the further provision that the auditor is prohibited from increasing the return as made by any taxpayer, except by authority of the board of assessors, and in the absence of any provision for an appeal to the auditor from these boards, the right given to the auditor to inquire, take testimony, and make or alter assessments of property of a taxpayer, was special and exceptional, and does not apply to cases regularly passed upon and determined by the tax boards.

3. ASSESSMENTS—MANDAMUS.—The duty of the auditor to enter this valuation as fixed by these boards is purely ministerial, and he having assumed to alter and increase it and enter the increased assessment upon his books, he may be compelled by mandamus to restore it to the proper amount.

Before HUDSON, J., Marlboro, December, 1891.

This was a petition by the Bank of Marlboro for a writ of mandamus. The petition was as follows:

To the Honorable J. H. Hudson, judge of the Fourth Judicial Circuit:

I. The petition of Bank of Marlboro respectfully represents to your honor—

I. That your petitioner is a corporation duly chartered and organized under and by virtue of an act of the general assembly of the State of South Carolina, entitled "an act to incorporate Bank of Marlboro," approved December 23, 1884; that its capital stock consists of five hundred and ninety-five shares, of the par value of one hundred dollars each, and that its place of business is at Bennettsville, in the County of Marlboro, and State aforesaid.

II. That the above named Eli T. Covington is the duly appointed and regularly commissioned auditor for the said County of Marlboro, and has been, and is now, discharging the duties of his said office.

III. That on the 20th day of February, A. D. 1891, the return of your petitioner was made to the said auditor, in accordance with, and in the manner required by, the statute in such case made and provided, in which said return the true value in money of said bank's capital stock was returned, by estimation only, at seventy-three thousand one hundred and eighty-five dollars ($73,-185), that being at the rate of one hundred and twenty-three dollars for each share.

IV. That said return was accepted by the said auditor, and, as required by law, was delivered without objection or remark to the board of assessors for Bennettsville township, that being the township in which said bank has its place of, and conducts its, business; which said board assessed the whole of the taxable property of your petitioner at fifty-nine thousand five hundred (59,500) dollars.

V. That at the regular meeting of the board of equalization of the said County of Marlboro, held on the 17th day of March, 1891, being the second Tuesday in said month, for the purpose

of equalizing fairly and impartially all the property returned for taxation in said county, the said bank's return, with all others, was laid before them by the said auditor, when said board unanimously confirmed the amount made by the board of assessors, and said auditor was directed and instructed to enter upon the tax duplicate the whole of the taxable property of your petitioner at fifty-nine thousand five hundred (59,500) dollars.

VI. That the said auditor, in accordance with said direction and instruction, did enter upon the tax duplicate said property at the sum it was assessed at by the board of assessors and equalized by the board of equalization, and turned said duplicate over to the county treasurer, in order that he might receive and collect the taxes assessed thereon; but afterwards, to wit, on or about the first day of November last past, the said auditor obtained possession of said tax duplicate, and without warrant of law and in contravention of your petitioner's rights and his duties, as your petitioner is advised and believes, and when said capital stock was actually worth less than when said return was made, added seventeen thousand eight hundred and fifty ($17,-850) dollars to the value of said bank's property as assessed by the board of assessors and board of equalization, thus making the assessed value of said property seventy-seven thousand three hundred and fifty (77,350) dollars, instead of fifty-nine thousand five hundred (59,500) dollars, fixed as aforesaid.

VII. That your petitioner is, and always has been, ready and willing to contribute its just quota toward the payment of public expense and the administration of the government, but protested earnestly, verbally and in writing, against this great wrong, gross injustice, and invidious distinction, and has requested and demanded of the said auditor that he enter said property on the tax duplicate and tax list at the amount fixed by the board of assessors and board of equalization, but he has refused, and still refuses, to do so, alleging as a reason that he was instructed and ordered by the comptroller general to increase each share to one hundred and forty dollars ($140), but that he thought an increase to one hundred and thirty (130) dollars per share was all the bank could stand, and did so increase the valuation of said capital stock and enter said increase on the tax duplicate, and

your petitioner is remediless and entirely without relief in the premises, unless it be afforded by the interposition of this honorable court by its writ of mandamus.

Wherefore your petitioner prays that a writ of mandamus may issue against the said Eli T. Covington, as auditor of Marlboro County, commanding him to restore to the tax duplicate and tax list the valuation of the property of your petitioner at the assessed sum of fifty-nine thousand five hundred (59,500) dollars, and erase and remove any other assessment placed thereon or there against, to wit, the addition made thereto by him, and for such other and further order as may be proper and necessary in the premises, or to justice may appertain, and for the costs of these proceedings.

Above petition was duly verified by the president of the Bank of Marlboro.

An alternative writ of mandamus was thereupon ordered by Judge Hudson and issued by the clerk of court.

The following is the return of Eli T. Covington, as auditor to the alternative writ:

Eli T. Covington, county auditor for Marlboro County, upon whom has been served an alternative writ of mandamus requiring him to restore to the tax duplicate and tax list the property of the Bank of Marlboro as assessed at the sum of fifty-nine thousand five hundred dollars, and erase any other value placed thereon or there against, or to appear before the judge of the Fourth Judicial Circuit at Bennettsville, S. C., on the 14th day of December, 1891, and show cause why he refuses to do so, for return and answer thereto says:

I. That he is the county auditor for the County of Marlboro, and is now discharging the duties of the said office.

II. That the Bank of Marlboro did make a return of its capital stock to him as auditor, and fixed in said return its value at seventy-three thousand one hundred and eighty-five dollars, or one hundred and twenty-three dollars per share.

III. That the said return was delivered to the board of assessors for Bennettsville township, in which township the said bank is located, and the said board of assessors assessed the taxable

property of the said bank at fifty-nine thousand five hundred dollars, and that subsequently the board of equalization of said county confirmed the assessment.

IV. That said assessment so made was entered upon the tax duplicate of the auditor for taxation.

V. That on the         day of November, 1891, under and by authority of section 239, of the General Statutes of the said State, and as it was his duty to do under said section, and after information that the valuation of the capital stock of the Bank of Marlboro for taxation was less than it should have been, he, as auditor of said county, notified the president of the said bank, and also its cashier, and also several witnesses to appear before him on a day fixed in said notice, to be examined on oath, touching the value of the stock of said Bank of Marlboro ; that after a full examination of the president of said bank and several witnesses, he determined that the valuation of the capital stock of the said bank should be seventy-seven thousand three hundred and fifty dollars, or one hundred and thirty dollars per share, all of the said testimony upon which he based his judgment being herewith exhibited and attached; that immediately thereafter he charged against the said Bank of Marlboro in the duplicate the said amount of seventy-seven thousand three hundred and fifty dollars, with the taxes thereon ; that all of said action on his part was had and determined before the settlement with the county treasurer for the year.

VI. That the tax duplicates were duly prepared by him as required by law, and one of them delivered to the county treasurer, soon after his said action above mentioned, and in the said duplicate so delivered the value of the capital stock of the Bank of Marlboro is assessed at seventy-seven thousand three hundred and fifty dollars, with the taxes on said amount, and that the same amount has been reported to the comptroller general of the State.

VII. That a demand was made upon him by the president of the Bank of Marlboro on the 10th day of December, A. D. 1891, to erase said assessment on the duplicate and restore the amount fixed by the board of assessors, but the demand was refused, on the ground that he had no authority, as auditor, to do so, after

the action taken by him under section 239 of the General Stat-
utes, and the preparation of the duplicate in accordance there-
with, and the delivery of one of the duplicates to the county
treasurer.

Wherefore the respondent submits that a peremptory writ of
*mandamus* should not issue compelling him to erase the said
assessment against the Bank of Marlboro, when he has no au-
thority so to do, and has acted in accordance with law in his
action as auditor in assessing the capital stock of the said bank
as it now appears in the tax duplicate.

The judgment rendered by the Circuit Judge was as follows :

On the 20th of February, 1891, the president of the aforesaid
Bank of Marlboro returned to the respondent, the auditor of
Marlboro County, the capital stock of the said bank at the sum
of $73,185, whilst the par value thereof was only $59,500. The
president, in his said return, estimated each share of $100 to be
worth $123. This return was accepted by the county auditor,
and was, at a regular meeting, submitted to the board of assessors
for Bennettsville township, in which the bank is located. Upon
due consideration this board assessed the real value for taxation
of the capital stock of the said bank at par, to wit, $59,500.
This action of the township board of assessors was, at a regular
meeting, duly considered by the county board of equalization,
and by them duly approved ; and the auditor was directed to
enter the same upon his own and the treasurer's duplicate, which
he did.

The comptroller general, learning that the assessment had
been thus entered upon the county auditor's tax list and dupli-
cate, instructed that officer to have the assessment increased.
Accordingly, about the first day of November last, the auditor
proceeded to take testimony as to the market value of the stock
of said bank, and against the protest of the president, increased
the assessment to $77,350, estimating each share of $100 to be
worth $130 on the market. The auditor accordingly changed
the figures upon his own duplicate and upon the duplicate in
possession of the treasurer, and thus increased the valuation of
the taxable personal property of the bank, after the same had

been fixed by the township board of assessors and county board of equalization, which boards, after full deliberation, had reduced the bank's return.

The bank now seeks by writ of mandamus to compel the auditor to restore to his own tax list and the duplicate in possession of the treasurer the assessment of its property as lawfully fixed by the proper boards and unlawfully increased by the auditor. On the 12th instant an alternative writ of mandamus was granted by me, requiring the auditor to made the restoration, or to show cause before me to-day, if any he can, why the restoration of the assessment as fixed by the lawful board should not be made. To this writ the auditor makes returns, in which he admits the allegations of fact set out in the petition, and defends his action under the authority contained in section 239 of the General Statutes, which section he says he complied with in raising the value of the property of the petitioner. He further urges that the increased assessment has been reported to the comptroller general, and that the matter is now beyond his control.

The argument of the attorney general in behalf of the county auditor presents no questions for my consideration which were not involved in the recent case of the Bank of Newberry against the county auditor, except that the county auditor of Marlboro proceeded, under section 239 of the General Statutes, to give a hearing to the Bank of Marlboro and to take testimony as to the market value of the stock, whereas the auditor of Newberry did not give this hearing to that bank. In pursuing this course, it is contended that the auditor of Marlboro was in the lawful exercise of judicial discretion, and was not performing a merely ministerial act, and that if he erred in judgment, his error cannot be corrected by mandamus, but only by appeal to the comptroller general under section 254. Reference to section 254 does not sustain this argument as to the right of appeal to the comptroller general in this case, as that right is given only when the county board of equalization refuses relief. The appeal lies only from that board to the comptroller general; but the petitioner is seeking to sustain the action of the assessing boards and to prevent the auditor upon his own motion, and by directions of the comp-

troller general, from interfering with and overruling the deliberate and well considered action of the boards having sole jurisdiction in the premises. So that it is manifest that the petitioner has no remedy by appeal from the action of the auditor in this case to the comptroller general, nor to any other tribunal; and to prevent the consequences of this increased valuation of property, or rather this alteration of a lawful assessment, the only remedy is by mandamus.

This case, then, stands on all fours with that recently decided by me at Newberry, unless it is to be distinguished therefrom by the action of the auditor in proceeding to summon witnesses and to take testimony before changing his books, and thus to sustain and justify himself under section 239. An examination of the statutes from section 238 to section 246, inclusive, satisfies me that the purpose of these sections is to enable the auditor and to make it his duty to discover property not returned, and to detect and punish frauds in tax returns, a duty he is expected to perform ordinarily before the meeting of the assessing boards, but which may be performed at any time before settlement with the treasurer. It is not the intention of the law to confer upon him the right to review, reverse, alter, or modify the action of the board of township assessors or board of equalization in fixing the valuation of property fully returned and duly considered by them.

The Bank of Marlboro made a full return, keeping nothing concealed, and placed a value upon its property above par, and so high that both boards of assessors, after mature deliberation, saw fit to reduce it to par. The auditor acts as clerk to the county board of equalization, and as such records their decrees and judgment. Section 229 expressly forbids the county auditor to increase a return of property as made by a taxpayer, or by his or her agent, except upon the authority of the board of assessors; and section 257 imperatively commands that the county auditor "shall add to or deduct from the valuation of the real or personal property of individuals, companies, or corporations, such sum or sums as may be ordered by either of said boards," meaning the special board of equalization in the city of Charleston, and the county board of equalization in the other counties, section 256

having provided for a special board of equalization for the city
of Charleston. Here is a plain ministerial duty required of him
by language too explicit to be mistaken, and this duty having
been at first performed by the respondent, he has violated by the
alteration and increase of the assessment of the county boards
and the corresponding change in his duplicates.

It is, therefore, ordered, adjudged, and decreed, that the return
of the respondent to the alternative writ of mandamus is insuffi-
cient, and that the mandate in said writ be made absolute and
peremptory.

The writ of mandamus was according issued, and defendant
appealed on the grounds stated in the opinion of this court.

*Mr. McLaurin,* attorney general, for appellant.

I. The judge had no authority to grant the writ, because sec-
tions 269 and 171 of the General Statutes of South Carolina
prohibit any *court* or *judge* from issuing any *writ* or *order* or
*process* of *any kind, staying* or *preventing* any officer of the State
charged with a duty in the collection of taxes from taking any
step or proceeding in the collection of any tax, *whether such tax
is legally due or not.* Section 268 of the General Statutes pro-
vides the only, and an exclusive, method by which a taxpayer
can contest an unjust or illegal tax. Section 269 provides that
there shall be no other remedy in any case of the illegal or
wrongful collection of taxes, or attempt to collect taxes, than
that provided in section 268. The method provided in that sec-
tion is for the taxpayer to pay the taxes under protest, and then
bring suit against the treasurer for the illegal excessive tax. This
remedy is given when the taxpayer conceives the tax to be unjust
or illegal for any cause.

In the case of the State *v.* Gaillard (11 S. C., 309), this court
held that section 269, which prohibited the court from issuing
any writ or process of any kind on the part of a taxpayer, was
constitutional. The Supreme Court of the United States affirmed
the decision of the State Supreme Court. And see 23 S. C., 70.

II. A writ of mandamus cannot rightfully issue when there is
another specific or adequate legal remedy. 33 S. C., 276; 32

*Id.*, 99; 4 *Id.*, 475, 502; 16 *Id.*, 39; 25 Barb., 73; 8 Pick., 47; High Mand., 16, 17. In this case section 268 provides a remedy for the taxpayer, to wit, to pay the illegal tax and recover it in an action against the treasurer. This remedy is adequate, for the protesting taxpayer gets exactly the same redress he would get by writ of mandamus. Section 254 allows an appeal by the taxpayer from the assessment of the board of assessors to the comptroller general. But after the assessment has been made and the right of appeal is gone, then the taxpayer must pay the tax, and contest its legality and justice as provided by section 268.

III. A writ of mandamus should not issue, because the auditor is an officer intrusted by law with assessment and equalization of taxes, and while mandamus may be issued to set such officers in motion, yet it will not go to compel tax officers to make corrections in the assessments of taxes for their county after the assessments have been completed and warrants issued to the treasurer. High Mand., 137; 16 S. C., 40. A writ of mandamus will not lie to correct an alleged error in a tax duplicate. *Ibid.*.

IV. To be entitled to the writ, the relator must show that the respondent is bound to the performance of some certain specific duty of a ministerial character, imposed by law, and will not issue in matters of discretion and conscience. 7 Rich., 298; 32 S. C., 99; 19 Pick., 298. The abatement or reduction of taxes improperly assessed is essentially a judicial rather than a ministerial act. 16 S. C., 39; High on Mand., 118. Section 239, General Statutes, requires the auditor to do just what he has done, and he clearly has exercised some judicial functions. He swore witnesses, heard and passed upon testimony. The object of section 239 was to insure a fair and full valuation of property. The boards of assessors and of equalization act without testimony, and section 239 was intended to give the auditor, if dissatisfied with the assessment so made, the power to hear testimony and correct the assessment made by the board of assessors. Suppose the auditor puts, under section 229, in column of remarks, an increased valuation before the board meets, and it is taken off, is there no remedy? Section 239 is intended to meet such cases.

V. His honor, who heard the case below, says : "The comptroller general instructed the auditor to have the bank's assessment increased." The return of the auditor and all the papers in the cause show that the auditor acted under section 239 of General Statutes in hearing testimony and determining the true value of the shares. His honor further holds that section 239 only applies in case of fraud. It is respectfully submitted, that the act provides for other cases, and that section 241 further provides for a penalty where fraud exists, and for no penalty when the mistake is unintentional. It is further respectfully submitted, that even if the statute applies only to cases of fraud, and the auditor is empowered to hear testimony and decide fraud or no fraud, that he is invested with judicial functions, and mandamus will not issue.

VI. Which is the legal assessment, that of the auditor or of the board of assessors ? The State constitution provides— (1) That the *ad valorem* system of taxation shall prevail. (2) It further provides for equality of taxation, and the legislature has, under the constitution, provided laws for the attainment of both these objects.

The tax acts must be construed as a whole, forming a system to accomplish these two objects, and not by sections. These acts are intended to make citizens pay taxes on what they are worth, the true value of all their property, and that there shall be equality among classes and individuals. To attain these objects, certain officers are necessary, to wit, auditor, board of assessors, and of equalization. (1) These acts require the citizen to make a return of his property. (2) The returns made are to be supervised by the auditor and board of assessors. (3) These officers are to act in concert and aid each other. Two modes are provided for this supervision, to wit: (1) The auditor examines the returns and makes his remarks about the valuation from personal knowledge, section 229. (2) Then the board of assessors look over the returns, and make their remarks from personal knowledge.

If the *auditor* and *board of assessors agree*, the board of equalization take this amount and equalize upon it. *But* section 239 provides, that if, after all this and up to the time of the settle-

ment with the treasurer for that year, information comes to the auditor, or he "*shall suspect*," that any property is assessed below its "*true value*," he is allowed to hear testimony and determine whether such information or suspicion be correct, and after this kind of judicial investigation the judgment of the auditor prevails, and this assessment, and not the one made on his personal knowledge or on that of the board of assessors, is the final and legal assessment. Section 254 provides for an appeal by the taxpayer to the comptroller general from the board of assessors, if the assessment is too high, and provides no remedy if the assessment is too low. Section 239 is intended to provide for the latter emergency, and allow the auditor to investigate.

VII. The fact that the tax laws do not allow a judge to grant any writ to stay the collection of taxes, shows that the intention was to make the collection of taxes independent of the judiciary, and to keep the whole management within the power of the officers of the tax department, unless there is fraud. &c.

IN CONCLUSION. It is a perversion of the theory and history of mandamus to prevent by this writ the collection of taxes. The writ had its origin in *Magna Charta*, and was at first a letter missive from the king commanding the performance of a particular act or duty by those to whom it was sent; to it no return was allowable and disobedience was punishable by attachment. Later it was grantable on petition, and was issued *per regem et concilium*, and being chiefly used to enforce restitution to public office was called the "*writ of restitution.*" It at length assumed the shape of an original writ, and embracing matters not strictly involving the notion of a restitution, as where it commanded admission to an office, &c., it resumed the name of mandamus; but while the courts have enlarged the scope of the writ, and while not strictly speaking in America a prerogative writ, it is still only granted in extraordinary cases, and I know of no case where it has gone further than to set in motion the tax officers ; not make a change in the assessment after they have acted. Tapping and High on Mandamus.

*Messrs. H. H. Newton, J. F. J. Caldwell,* and *J. Y. Culbreath,* contra.

February 22, 1892.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    This is a petition by the Bank of Marlboro for a writ of mandamus to compel the auditor of Marlboro County to restore to his own tax list and the duplicate in the possession of the treasurer of Marlboro County, the assessment of its property, as lawfully fixed by the proper boards, and, as alleged, unlawfully *altered* and increased by the said auditor.

As stated, the president of the bank, in January, 1891, duly returned to said auditor the capital stock of said bank at the sum of $73,185, while the par value thereof was only $59,500. The president, in his return, estimated each share, $100, to be worth $123.    This return was duly submitted by the county auditor to the board of assessors, who assessed the real value for taxation of the capital stock of the said bank at par, to wit, $59,-500.    This action of the township assessors was, at a regular meeting of the county board of equalization, duly considered and approved by them, and the auditor was directed to enter the same upon his own and treasurer's duplicate, which he did.    The comptroller general instructed the said auditor to have the assessment *increased*.    Accordingly, about the first day of November last, the auditor, under section 239, proceeded to take testimony as to the market value of the stock of said bank, and, against the protest of the president, *increased* the assessment to $77,350, estimating each share to be worth $130 on the market, and in accordance with such increased valuation, changed the figures upon his own and the treasurer's duplicate.

Thereupon the bank filed, in the Court of Common Pleas, a petition for a writ of *mandamus*, against Eli T. Covington, as auditor of Marlboro County, commanding him to return to the tax duplicate and tax list the valuation of the bank's property at the assessed sum of $59,500, and to erase and remove any other assessments placed thereon, to wit, the addition made thereto by him, &c., and for such order as may be necessary and proper in the premises.    The writ was made returnable before Judge Hudson, Circuit Judge of the Fourth Circuit, at chambers.    The auditor in his return to the writ admitted the allegations of the

17—35

petition, and showed for cause that his acts in the premises were authorized by section 239 of the General Statutes, and, further, that the *increased assessment* had been reported to the comptroller general, and that the matter was now beyond his control.

His honor, Judge Hudson, heard argument, and, among other things, *held* as follows: "It was not the intention of the law to confer upon the county auditor the right to review, reverse, alter, or modify the action of the board of township assessors or board of equalization, in fixing the value of property fully returned and duly considered by them. The bank made a full return, keeping nothing concealed, and placed a value upon the property above par, and so high that both boards of assessors, after mature deliberation, saw fit to reduce it to par. The auditor acts as clerk in the county board of equalization. Section 229 (General Statutes) expressly forbids the county auditor to increase a return of property as made by a taxpayer or by his or her agent, except upon authority of the board of assessors. Section 257 imperatively commands that the county auditor, "shall add to or deduct from the valuation of the real or personal property of individuals, companies, or corporations, such sum or sums *as may be ordered by either of the said boards*," &c., &c., and so ruling, his honor granted the writ as prayed for.

From this order Eli T. Covington, the auditor, appeals to this court on the following grounds: "I. Because his honor erred in granting the peremptory writ on the ground that the county auditor is only required to perform under its mandate a plain ministerial duty. II. Because his honor erred in holding that the county auditor had no authority, under section 239 of General Statutes, to summon parties and witnesses before him to determine the value of the bank stock. III. Because his honor erred in holding that the county auditor had no authority to change the assessments made by the different boards of the bank stock, or to determine its value under section 239. IV. Because his honor erred in holding that section 239 of the General Statutes only applied in cases where there was fraud, and the auditor could only act under it to detect and punish fraud in tax returns. V. Because his honor erred in holding that section 257 makes it the imperative duty of the auditor to enter the amounts ordered

by the boards, and he would not have the right to change the same under section 239, except in case of fraud. VI. Because his honor erred in holding that the auditor in his action in this case was not in the lawful exercise of a judicial discretion in examining witnesses and determining the value of the bank stock under section 239. VII. Because his honor erred in holding that section 239 of General Statutes had no application to this case. VIII. Because his honor erred in granting the peremptory mandamus commanding the auditor to change the assessments, made by him under the law, of the bank stock in the duplicate. IX. Because his honor erred in holding that the Bank of Marlboro had no adequate legal remedy."

Our law upon the subject of the assessment of property for taxation is contained in the General Statutes, title III., from section 164 to 320, both inclusive. It will be seen that the provisions are very numerous, and some of them are seemingly not in perfect accord, but being *in pari materia*, we must endeavor to construe them together, so as, if possible, to make one consistent system. In the machinery adopted for the purpose of getting a true assessment, it seems that the *first* step is for the taxpayer to make a return on oath, as to his property and its value. In the case of a bank, the president and cashier make the return, giving the names and residences of the stockholders, &c. These returns are delivered to the county auditor. *Second.* The auditor then submits the return to the township board of assessors, whose duty it is to assess the value of the property in the return. It shall be the duty of the auditor to state in the column of remarks, opposite each taxpayer's name, in the return made by him, any amount which he believes ought to be added to the valuation of the property listed by such taxpayer. But he shall not increase the return made by any taxpayer, except by authority of the board of assessors. See section 229. *Third.* The chairman of the different boards of assessors in the several counties (except Charleston), constitute the county board of equalization, of which the county auditor is the clerk, who lays the return before the boards, which "shall hear all grievances, and any person whose property has been assessed above its true value, who cannot secure relief from said

board, shall have the right to appeal to the *comptroller general of the State*," and this seems to be the only appeal provided for in the whole act.

There can be no doubt that this is the usual and regular course to obtain the true and authoritative assessment desired; and it seems to me, that these successive boards—appointed and sworn for the express purpose of exercising their judgment as to the value of the property—are charged with at least *quasi judicial duties*, and when they have acted, especially when they concur in their action, the matter, in the absence of mistake or fraudulent collusion, is final and conclusive, *res adjudicata*, and binding not only upon the taxpayer, but upon the auditor and all other officers of the State. "The jurisdiction of an equalization board, in equalizing valuations for taxation, *is exclusive*." Cooley on Taxation, 528, 529. "As a general rule, the decisions of officers and tribunals specially created and charged in tax laws with the duty of valuing property for taxation and equalizing such valuations *are final and conclusive*." *Wagoner* v. *Loomis*, 37 Ohio St., 571. See *County of Richland* v. *Miller, clerk*, 16 S. C., 236.

But it is urged that section 239 is in conflict with this view, and gives the *auditor* the right to summon parties and witnesses before him to determine the value of the property returned—bank stock, &c. It is true that the section indicated, and those immediately following it (241, 242, and 243), seem to give the auditor *quasi judicial* powers, to examine parties and witnesses and make or alter assessments *in a certain class of cases*. That class, however, is not very clearly defined or limited, but we think it plain, at least to this extent, that the provision was not intended to be general, *but special and exceptional in character*. It reads as follows: "If the auditor shall suspect or be informed that any person, corporation, or company has evaded making a return, or has made a false return of his or their personal property for taxation, or has not made a full return, or that the valuation is less than it should have been, according to the rules prescribed by this chapter, he shall, at any time before the settlement with the treasurer for the year, notify such party, and also such parties as he may desire to examine, to

appear before him at his office, at a time fixed in said notice, and the party and any witnesses called shall be examined by the auditor, under oath, touching the personal property of such party, and the value thereof, and everything tending to evince the true amount such party should have returned for taxation," &c.

It will be observed that no mention is made in the section of cases already determined by the boards, nor is any *appeal* expressly given to the auditor from a decision of the boards. It seems to us that this exceptional power given by the section, authorizing the county auditor to examine witnesses, and in certain cases to attach penalties, &c., does not necessarily conflict with the general powers given by other sections to the boards of assessors; and, therefore, the auditor had no rightful authority to disregard a decision regularly made and the assessment entered on the duplicate for taxation, by order of the board of assessors. It is a well settled rule, that in construing an act of the legislature, effect should be given to every part of it. We do not think that it was the intention of the law makers, that section 239 should apply to all cases, including those regularly decided by the boards of assessors. If so, the whole machinery of the boards, so carefully provided in detail for fixing assessments, would be entirely useless, substantially repealed by implication, and the whole subject of assessments left virtually under the control of a single officer, who, by another section of the same act, is in express terms prohibited from *increasing* the return as made by any taxpayer, *except by authority of the board of assessors.* The court does not feel at liberty to assume that the act was so framed as that one part of it must necessarily abrogate the other. As we conceive, by proper construction, all the provisions, those creating the general jurisdiction of the boards, as well as that giving the special and exceptional powers to the auditor—may stand together, each in full force within its own proper limits. I agree that it was not the intention of the law to confer upon the auditor the right to review, reverse, alter, or modify the action of the boards of assessors and equalization, in fixing the valuation of property, fully returned and duly considered by them.

In the view we take, the duty of the auditor in this case, was purely *ministerial* as he at first performed it; and *mandamus* is the proper remedy, to require the assessment to be restored as originally entered by order of the boards of assessors and equalization. See the cases of *The National Bank of Newberry*, lately decided by this court.[1]

The judgment of the court is, that the judgment of the Circuit Judge be affirmed, and the appeal dismissed.