12047

BANK OF JOHNSTON *ET AL.* v. PRINCE, COUNTY TREASURER *ET AL.*

(134 S. E., 387)

1. OFFICERS.—Legislature, with power to create offices, has power to prescribe duties, powers, and privileges of officers.

2. OFFICERS.—Under Const., Art. 4, § 24, Article 10, § 13, and Article 11, § 4, General Assembly has power to prescribe duties and powers of County Auditors, County Treasurers, Comptroller General, and State Tax Commission.

3. TAXATION.—Act March 22, 1922 (32 St. at Large, p. 1017), relating to abatement of taxes by tax commission, did not repeal Civ. Code 1922, §§ 512, 513, relating to like matters.

4. TAXATION—ABATEMENT OF TAXES MAY BE ORDERED EITHER BY COMPTROLLER GENERAL OR BY TAX COMMISSION, EITHER OF WHICH COUNTY OFFICERS ARE BOUND TO OBEY (CIV. CODE 1922, §§ 459, 512, 513; ACT MARCH 22, 1922 [32 ST. AT LARGE, P. 1017] § 1).— Civ. Code 1922, §§ 512, 513, and Act March 22, 1922 (32 St. at Large, p. 1017), § 1, relating to abatement of taxes by Comptroller General and Tax Commission, provide concurrent remedies, and County Auditor and Treasurer are bound to obey order of Tax Commission, notwithstanding Civ. Code 1922, § 459.

5. TAXATION.—Mandamus will lie to compel County Treasurer and County Auditor to abate taxes as directed by Tax Commission, notwithstanding Civ. Code 1922, §§ 511, 513, and Const., Art. 5,

Original proceeding by the Bank of Johnston and others for writ of mandamus, to be directed to J. L. Prince, County Treasurer, and another. Writ granted.

*Mr. John I. Rice,* for petitioners, cites: *Tax Commission empowered to order abatement of taxes in certain cases:* Civ. Code, 1922, Secs. 358–371.

*Mr. T. B. Greneker* for respondent.

August 9, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The petitioners, Bank of Johnston, a corporation, and W. W. Bradley, as State Bank Examiner and liquidating agent of the said bank, presented their petition to the South Carolina Tax Commission, praying that the said commission would order an abatement as to certain taxes erroneously and improperly charged and assessed against the Bank of Johnston for the fiscal year 1925. Upon due consideration of that petition, the South Carolina Tax Commission issued and directed to the County Auditor and County Treasurer of Edgefield County, in which county the Bank of Johnston was located, the following order:

"Based on information herein stated and upon the affidavit of W. B. Ouzts, former vice president of the Bank of Johnston, and the written statement of the State Bank Examiner confirming said petition, we approve the within petition, and under authority given us in Act 571, Acts 1922, order an abatement of excessively assessed taxes."

Upon presentment of the order of the tax commission to the County Auditor and County Treasurer of Edgefield County, these officials refused to obey the same, declined to enter the abatement allowed, and refused to charge off the taxes alleged to have been erroneously and improperly assessed. The petitioners thereupon applied to this Court,

in its original jurisdiction, for an order requiring the said auditor and treasurer to show cause why they should not be required by mandamus to receive the said order of the Tax Commission, and why they should not duly enter the abatement, allowed by the Tax Commission, upon their books as a lawful and proper abatement of said taxes.

The respondents, the County Auditor and County Treasurer of Edgefield County, at the proper time, made their return. They admitted practically all the material allegations of the petition. They asserted, however, that the petition should be dismissed for the following reasons:

(1) That the Tax Commission has no authority to order an abatement of the taxes assessed against the Bank of Johnston, because the taxes were legally assessed and were not improperly, erroneously, or illegally assessed.

(2) That before the respondents can be required to carry out the order of the Tax Commission, they would have to be authorized to do so by the Comptroller General of the State.

In the argument before this Court the attorney for the respondents, with fairness and candor, stated that the respondents, as trusted county officials, are desirous of observing the law of the State, and wish this Court to determine if they should act in this matter under the instructions of the Comptroller General or under those of the South Carolina Tax Commission. The respondents cite the Court to Section 459, Vol. 3, Code 1922, as to the duty of the County Auditor to follow directions of the Comptroller General of the State. The language of that part of the Section which appears pertinent here is as follows:

"He [the County Auditor] shall also correct any errors in his duplicate when ordered by the Comptroller General, but he shall not reduce any assessment of personal property regularly made and returned to his office, nor make any

deduction from the valuation of any tract, lot, or parcel of real estate, except upon the written order of the Comptroller General, which written order shall only be made by the Comptroller General upon a statement of facts submitted to him in writing. * * * Provided, that any correction made in the duplicate by the County Auditor shall be entered on both the Auditor's and Treasurer's duplicate, except that, in case of the reduction of any assessment or tax, the Auditor may furnish the Treasurer with a certificate of such reduction."

The respondents further contend that the taxes assessed against the bank were legal, and that the only way the petitioners can obtain a refund or abatement is to follow the procedure laid down in Section 512 and 513 of vol. 3, Code 1922, and that a writ of mandamus will not be granted by any Court to require the abatement or refund of a tax legally assessed, and that the Courts will not interfere with the collections of taxes. Section 512, Vol. 3, Code 1922, provides that in case a taxpayer conceives that taxes charged against him are "unjust or illegal for any cause," he shall pay the said taxes under protest, and that the taxpayer may, at any time within 30 days after making the payment, bring an action against the County Treasurer for the recovery of the amount so paid in the Court of Common Pleas for the county in which said taxes are payable. Section 513, Vol. 3, Code 1922, states that there shall be no other remedy in any case of the illegal or wrongful collection of taxes or attempt to collect taxes. This section also contains the following provision:

"And no writ of mandamus shall be granted or issued from any Court, or by the Judge of any Court, directing or compelling the reception for taxes of any funds, currency, or bank bills, not authorized to be received for such taxes by the act of the General Assembly levying the same; and no writ, order, or process of any kind whatsoever, staying

or preventing any officer of the State charged with a duty in the collection of taxes from taking any step or proceeding in the collection of any tax, whether such tax is legally due or not, shall in any case be granted by any Court, or the Judge of any Court; but in all cases whatsoever the person against whom any taxes shall stand charged upon the books of the County Treasurer shall be required to pay the same in such funds and moneys as the said County Treasurer shall be authorized to receive by the act of the General Assembly levying the said taxes in manner and form as above provided, and thereupon shall have his remedy under the provisions of the next preceding section." Section 512.

The petitioners rely upon Act No. 571 of the Acts of 1922 for the authority of the South Carolina Tax Commission in this matter. Section 1 of this Act, which was approved by the Governor on March 22, 1922, is as follows:

"Whenever it shall appear to the satisfaction of the South Carolina Tax Commission that any tax has been erroneously, improperly, or illegally assessed against any person, firm, or corporation within this State, except municipal taxes, that the South Carolina Tax Commission shall have the power and authority to order any officer having authority to assess or collect taxes to abate the whole or any part of said taxes that may have been erroneously, improperly or illegally * * * paid, to refund the same to the person, firm or corporation from which it has been unjustly collected, and such officer having the custody of such taxes shall refund the same on the order of the South Carolina Tax Commission: *Provided,* such officer having the custody of such taxes shall have in his possession the taxes so improperly collected, or rather funds from which the same may be lawfully refunded, and in case such officer shall not have in his custody or possession funds which may be used as herein provided, he shall, in case of the County Treasurer, report the order of the South Carolina Tax Commission

to the legislative delegation from his county for the purpose of having the delegation make provision for the payment thereof; and if the tax has been collected by the State Treasurer, then in each and every such case, he shall report to the General Assembly that he has been ordered by the South Carolina Tax Commission to refund certain taxes, and that he has no funds available for the payment thereof, with the request that proper appropriation be made to cover such amount as may have been ordered to be so refunded."

The Constitution of the State made no direct provision for the creation or organization of the South Carolina Tax Commission. We do not find, either, anything in our Constitution providing for the creation of the office of County Auditor. While the Constitution contains a provision relating to the compensation of County Treasurers for the collection and disbursement of school moneys (article 11, § 4), we do not even find that that office was created by that instrument. But the Constitution does direct the General Assembly to provide for the assessment of all property for taxation, and directs that State, County, township, school, municipal, and all other taxes shall be levied on taxes and that the taxes for the subdivisions of the State the same assessment, which shall be that made for State shall be levied and collected by the respective fiscal authorities thereof. Article 10, § 13.

There is nothing in the Constitution which prevented the General Assembly from creating the South Carolina Tax Commission and the offices of County Auditor and County Treasurer. Since power to create these officers rested in the Legislature, it followed, of course, that the lawmaking body had the power to prescribe the duties of such officers and to grant to them certain powers and privileges so long as such duties, powers and privileges did not conflict with anything contained in the Constitution. While the office of Comptroller General is a creation of the

Constitution, the duties of that official are prescribed by
the General Assembly.   Const. 1895, Art. 4, § 24.

It appears, therefore, and we so hold, that the
General Assembly of the State has full power and
authority to prescribe the  duties and powers of
County Auditors, County Treasurers, the Comptroller
General, and the South Carolina Tax Commission.

Although the Act of 1922 is legislation subsequent to
the Section of the Code of 1922, to which attention
has been called, the provisions of that Act have not
repealed the enactments of the cited sections.   The Act it-
self does not carry any repealing clause.   To the contrary,
in Section 4 thereof, it is distinctly provided: "This Act
shall be in addition to any remedies for the abatement or
refund of taxes that may now be provided by law."
Accordingly, we must assume that it was the intention of
the General Assembly that the Act of 1922 be construed
along with the law existent at that time relating to the
abatement or refund of taxes.

It appearing, then, that the Act of 1922 and the
Sections of the Code, hereinbefore cited, are all of
full force, the result is that a taxpayer has open to
him two methods by which he can seek recovery of taxes
paid by him.   One of these is the remedy given in Section
512, vol. 3, Code 1922, where, when a taxpayer conceives
that the taxes charged against him are "unjust or illegal
for any cause," he may bring his suit for recovery in the
Court of Common Pleas.   His other remedy is to make
application to the South Carolina Tax Commission, who has
authority, under the Act of 1922, to order any officer having
custody of a tax "erroneously, improperly or illegally paid"
to refund the same to the person from whom it has been
unjustly collected.   It will be noted that in Section 512,
that, when he recovers in the Court of Common Pleas, the
taxpayer must show that the taxes were "wrongfully or

illegally collected"; while to obtain a refund through the tax commission, it must appear to the satisfaction of that commisssion that the taxes have been paid "under erroneous, improper or illegal assessment." While the words used in Section 512 and in the Act of 1922 are not exactly identical, we are of the opinion that they have practically the same meaning and accomplish the same purpose.

A study of the sections from the Code and the Act of 1922 seem to indicate also that a taxpayer has now at least two remedies for securing an abatement or reduction of the assessments made as to his property. One of these is through the office of the Comptroller General, who has authority, in proper cases, to require the County Auditor to reduce assessments of personal property regularly made and returned to the office of the Auditor, and likewise to require deductions from the valuations of real estate. Another way open to the taxpayer seeking relief is by application to the South Carolina Tax Commission, which body has under the Act of 1922, "the power and authority to order any officer having authority to assess or collect taxes to abate the whole or any part of said taxes that may have been erroneously improperly or illegally assessed."

This Court is not concerned with the question of the propriety or impropriety of the General Assembly, as a matter of policy, requiring County Auditors and County Treasurer to be subject to orders from both the Comptroller General and the South Carolina Tax Commission. The question for the Court to decide is this: Are the Auditor and Treasurer of Edgefield County required to obey the order of the Tax Commission? It occurs to us that the language of the Act of 1922 is clear and plain, and the General Assembly having full authority to enact the legislation contained in that Act, the officers named must carry out the orders of the commission.

The remaining question for determination is the power of this Court to issue the mandamus sought herein. In addition to Section 513, Vol. 3, Code 1922, pointed out by the respondents, forbidding the staying or preventing the collection of certain taxes by the Court or Judge thereof, there is contained in Section 511, *Id.,* this provision:

"The collection of taxes shall not be stayed or prevented by any injunction, writ or order issued by any Court or Judge thereon [thereof]: *Provided,* that this section shall only apply to state, county, city, town and school taxes; and taxes voted by townships in aid of railroads where the roads have been completed through said townships."

We are reminded that it has been held that this legislation was valid and not in conflict with the provisions of the Constitution (Article 5, § 4), whch gives the Supreme Court power to issue writs or orders of injunctions, mandamus, etc. *State v. Treasurer,* 4 S. C., 520. *State v. Gaillard,* 11 S. C., 309. *Chamblee v. Tribble,* 23 S. C., 70. *Western Union Tel. Co. v. Winnsboro,* 71 S. C., 231; 50 S. E., 870. The cases last cited, however, were modified to some extent or distinguished by the holding in *Ware Shoals Mfg. Co., v. Jones,* 78 S. C., 211; 58 S. E., 811, that the Supreme Court has power to restrain the collection of an illegal tax, notwithstanding the provisions of Section 511, Vol. 3, Code 1922 (Section 412, Code of 1922), providing that the collection of taxes shall not be prevented or stayed by injunction, etc., where the Legislature has not provided another adequate remedy for the protection of the taxpayer. As pointed out heretofore, however, there seems to be adequate remedy in our statutes for the protection of the taxpayer.

It seems, too, that this Court has made a distinction between the granting of a writ to stay or prevent the collection of taxes on the one hand, and the correction of tax

assessments on the other. *State v. Cromer,* 35 S. C., 213; 14 S. E., 493. *State ex rel. National Bank v. Boyd,* 35 S. C., 233; 14 S. E., 496. *State v. Covington,* 35 S. C., 245; 14 S. E., 499. In *State v. Covington* it was decided that mandamus would lie to a County Auditor to correct a tax assessment, which it was his plain ministerial duty to do, as of certain smaller amount, and that the provisions of the general statutes, stated hereinbefore, for recovery by suit of taxes, paid under protest, is not such an adequate remedy as to prevent the issue of mandamus to reduce the assessment of the amount or an unauthorized increase.

The petitioners herein do not seek to have this Court, as we understand it, interfere in any manner with the collection of taxes. They do, ask that the Court require certain county officials to perform their ministerial duty. The cases last cited are authority for holding that this Court has that power.

The judgment of this Court is that the prayer of the petition be granted, and that the writ of mandamus sought herein be issued.

Messrs. Justices Watts, Cothran, Stabler and Acting Associate Justice C. J. Ramage concur.

Mr. Chief Justice Gary did not participate.